# EXHIBIT B



Vishnu Sharma, CPA, CFE
2023 President
Sharma & Associates
Ft. Lauderdale, FL

Jeevan J. D'Mello, CMCA, AMS,
LMS, PCAM
President-Elect
Zenesis Corporation
Dubai, UAE

Jessica M. Towles, CMCA, AMS, PCAM
Immediate Past President
CCMC, Littleton, CO

Peter Kristian, CMCA, LSM, PCAM
Chairman
Government & Public Affairs Committee
Hilton Head Plantation—General
Manager
Hilton Head Island, SC

Ronald L. Perl, Esq.
Chairman
Federal Legislative Action Committee
Hill Wallack, LLP
Princeton, NJ

Thomas M. Skiba, CAE
Chief Executive Officer

Dawn M. Bauman, CAE
Chief Strategy Officer
Executive Director

6402 Arlington Blvd.
Suite 500
Falls Church, VA 22042
888.224.4321
www.caionline.org

December 28, 2023

The Honorable Janet Yellen        Ms. Andrea Gacki
Secretary                                        Director
U.S. Department of Treasury        Financial Crimes Enforcement Network
1500 Pennsylvania Avenue, NW   2070 Chain Bridge Road
Washington, DC 20220                  Vienna, VA 22182

Subject: Request for Exemption from Beneficial Ownership Interest Reporting under the Corporate Transparency Act and Anti-Money Laundering Act of 2021

Dear Secretary Yellen and Director Gacki:

I am writing to you on behalf of Community Associations Institute (CAI), the only national entity representing condominium associations, homeowners associations, and housing cooperatives across the United States. As we navigate implementation of the Corporate Transparency Act (CTA) and Anti-Money Laundering (AML) Act of 2021, we respectfully request an exemption for community associations from the beneficial ownership interest reporting requirements outlined in the legislation.

According to the Foundation for Community Association Research, the authoritative source in our field, there are approximately 70.1 million Americans residing in more than 355,000 community associations nationwide. These associations range from two-unit condominiums to large-scale associations with thousands of homes. The majority of these associations have fewer than 50 homeowners and are self-managed by volunteers who are not aware of their obligations under the statute.[1]

We acknowledge the importance of transparency and accountability in financial transactions, and we firmly believe community associations are inherently low-risk entities for money laundering and terrorist activities. The Department of the Treasury has acknowledged this in its statement, explicitly stating that local and regional nonprofits, which closely align with our member associations, pose a low risk in these areas.

---

[1] Source: Foundation for Community Association Research. "Community Association Fact Book 2022."
https://www.caionline.org/about/research/Documents/2022%20Fact%20Book.pdf

**Page 2 – Community Associations Institute (CAI)**
**Community association exemption request from BOI**

When you consider creating exemptions under CTA and AML, you must consider the financial model of a community association. Given the source and use of funds for community associations, there is no risk of terrorist activity and money laundering. [2]

- Community associations are usually organized as nonprofit, nonstock corporations in the state or statutorily authorized unincorporated associations. They usually do <u>not</u> qualify for a nonprofit tax determination by the IRS under Section 501(c) of the tax code. Instead, they typically file using Form 528/1120-H for homeowners associations. Which is a specific tax code form for community associations with a control in place very similar to the 501© status of the tax code.
- The community association is comprised of owners in a community. The owners each pay their fair share of the association's expenses through assessments. Assessments are determined by a budget adopted by an elected board of directors. The assessments are essentially the community association's only source of income. The only other income is typically minimal and generated by user fees and fines for violating the community's covenants.
- Assessments are like property taxes. They pay for the services delivered by the community including trash and snow removal, street maintenance, lighting, insurance, recreation facilities, stormwater management, landscaping, and more.
- Association expenses are usually fixed costs spent on contracts like trash removal, elevator maintenance, roof maintenance, landscaping, street maintenance, insurance, and payment for maintenance and repair of other amenities.
- Assessments also pay for services of licensed attorneys and CPAs who assist association boards in legal and financial compliance.
- The board of directors of a community association cannot collect assessments or make expenditures not authorized by the recorded covenants for their community.

Thus, it is obvious community associations are not a viable vehicle for terrorist activities or money laundering and should be exempted from the CTA and AML requirements.

Furthermore, the legislation explicitly outlines 23 exemptions from reporting requirements. One of which is granted to IRS tax-exempt organizations. Community associations operate like tax-exempt entities—with many small assessments and constrained expenditures. Consequently, we contend our members should be extended the same exemption afforded to tax-exempt organizations as outlined in the law. The specific exemptions language from the Corporate Transparency Act is outlined in section 6203(b)(6)(E). [3]

The legislation explicitly exempts entities that exercise governmental authority. Community associations, while private, exist primarily to govern common interest communities. They are providers of essential services similar to local governments. We respectfully suggest it makes sense to treat community associations like other entities that exercise governmental authority.

---

[2] Department of the Treasury. "Anti-Money Laundering and Countering the Financing of Terrorism (AML/CFT) Programs; Effectiveness." https://home.treasury.gov/system/files/126/20180511_SAR_AboutUs.pdf

[3] Corporate Transparency Act. Section 6203(b)(6)(E). https://www.congress.gov/bill/116th-congress/house-bill/2513/text

**Page 3 – Community Associations Institute (CAI)**
**Community association exemption request from BOI**

Another reason to grant an exemption is the redundancy of the information collection process. Community associations already furnish detailed information on their board members as part of annual tax or other statutory filings. Mandating an additional layer of reporting creates an unnecessary burden on these associations, especially for smaller associations that are self managed by volunteers.

The Foundation for Community Association Research estimates 2.5 million volunteer leaders serving on their community board of directors will be affected by this burdensome reporting requirement. This number is so large because directors of a community association may change every year.

Those who govern community associations are not investors and serve without any remuneration. We fear complying with this reporting requirement may stifle volunteerism and expose volunteers to civil and criminal penalties. Why should an unpaid volunteer subject themselves to the risk of liability? That risk will exacerbate the ongoing problem of finding volunteers to serve on community association boards. Reporting burdens are magnified by requirements in the CTA that updates be filed within 30 days of any changes to BOI. There is frequent turnover in association board members (beneficial owners) increasing this reporting burden and potential penalties for noncompliance. This impact emphasizes the urgency of our request for an exemption to alleviate the administrative and financial strain on our member associations.

In conclusion, we respectfully urge the Department of the Treasury to exempt community associations from the Corporate Transparency Act and Anti-Money Laundering Act of 2021. The inherent nature of community associations as low-risk entities, coupled with their existing compliance through federal and state filings, underscores the redundancy and impracticality of subjecting them to additional reporting obligations.

We appreciate your time and attention to this matter and welcome the opportunity to engage in further dialogue to address any concerns or provide additional information to aid understanding of the unique position of community associations. Please feel free to contact my colleague, Dawn M. Bauman, CAE, CAI's chief strategy officer at dbauman@caionline.org or (703) 867-5588 anytime.

Sincerely,

Thomas M. Skiba, CAE
Chief Executive Officer
Community Associations Institute