# EXHIBIT 1

THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| COMMUNITY ASSOCIATIONS INSTITUTE, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> JANET YELLEN, *et al.*, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) No. l:24-cv-1597-MSN-LRV |

## **DECLARATION OF JAMES MARTINELLI**

I, James Martinelli, declare the following to be a true and correct statement of facts:

1. I am the Acting Associate Director for the Policy Division of the Financial Crimes Enforcement Network (FinCEN), a bureau within the United States Department of the Treasury. I have held this position since March 2024. I previously served in several other roles within FinCEN, including as Deputy Associate Director for the FinCEN Policy Division, Director of FinCEN's Office of Regulatory Policy, and Section Chief for Regulatory Interpretation at FinCEN. In my official capacity as Acting Associate Director for the FinCEN Policy Division, I participate in the supervision of many aspects of FinCEN operations, including FinCEN's implementation of the Corporate Transparency Act (CTA).

2. FinCEN was created in 1990 and became a bureau of the U.S. Department of the Treasury by virtue of the USA PATRIOT Act of 2001. The Director of FinCEN is appointed by the Secretary of the Treasury and reports to the Treasury Under Secretary for Terrorism and Financial Intelligence.

3. The mission of FinCEN is to safeguard the financial system from illicit use, counter money laundering and the financing of terrorism, and promote national security through the collection, analysis, and dissemination of financial intelligence and strategic use of financial authorities. FinCEN exercises regulatory functions primarily under the Currency and Foreign Transactions Reporting Act of 1970, as amended by Title III of the USA PATRIOT Act of 2001 and other legislation, which legislative framework is commonly referred to as the "Bank Secrecy Act" (BSA). The BSA is the nation's first and most comprehensive Federal anti-money laundering and countering the financing of terrorism (AML/CFT) statute. The Secretary of the Treasury has delegated to the Director of FinCEN the authority to implement, administer, and enforce compliance with the BSA and associated regulations.

4. The CTA, enacted as part of the Anti-Money Laundering Act of 2020 in the National Defense Authorization Act for Fiscal Year 2021 and codified in relevant part at 31 U.S.C. § 5336, amended the BSA to, among other things, require certain entities to report information to FinCEN about their beneficial owners and the individuals who created or registered them.

5. Due to the nature of my official duties, I am familiar with FinCEN's development of regulations implementing the CTA's requirements as well as FinCEN's promulgation of guidance regarding the CTA and those implementing regulations. I am also familiar with FinCEN's consideration of requests for exemptions from these requirements, including the request for an exemption for "community associations" submitted to FinCEN by Thomas Skiba, on behalf of Community Associations Institute (CAI), through a letter dated December 28, 2023 (Exhibit A).

6. The statements I make in this declaration are made on the basis of my personal knowledge, upon information acquired by me from FinCEN staff through the performance of my official duties, and upon conclusions reached and determinations made in accordance therewith.

7. On December 8, 2021, building on an earlier advance notice of proposed rulemaking, FinCEN published a Notice of Proposed Rulemaking (NPRM), 86 Fed. Reg. 69920, to give the public an opportunity to review and comment on a proposed rule implementing the CTA's provisions requiring entities to report to FinCEN information about their beneficial owners and the individuals who created or registered the entities. In response to the NPRM, FinCEN received over 240 comments. Submissions came from a broad array of individuals and organizations, including Members of Congress, government officials, groups representing small business interests, corporate transparency advocacy groups, the financial services industry and trade associations representing its members, law enforcement representatives, and other interested groups and individuals.

8. FinCEN has not identified any NPRM comments submitted by CAI or any other plaintiff in this case. FinCEN received several comments from other persons arguing that FinCEN's implementing regulation should exempt all nonprofit organizations from the CTA's reporting requirements, even those that do not qualify for tax-exempt status under section 501(c) of the Internal Revenue Code. FinCEN, however, has not identified any comments to the NPRM arguing that community associations, homeowners associations, entities subject to section 528 of the Internal Revenue Code, or any other related entities in particular should be exempt from the CTA's reporting requirements. FinCEN's final rule implementing these requirements, 87 Fed. Reg. 59498, was published September 30, 2022, and became effective January 1, 2024.

9. FinCEN has published a range of guidance materials to assist the public with complying with the CTA's requirements. These materials may be accessed through FinCEN's website at https://www.fincen.gov/boi. Among other resources, these materials include a small entity compliance guide, an education and outreach toolkit, instructional videos, and dozens of answers to frequently asked questions (FAQs). These FAQs are found at https://www.fincen.gov/boi-faqs.

10. FinCEN's guidance materials, including the FAQs, are not intended to alter any requirements of the CTA or its implementing regulations. As FinCEN's FAQs expressly state, "These FAQs are explanatory only and do not supplement or modify any obligations imposed by statute or regulation." Rather than imposing new requirements, FinCEN's guidance materials restate and explain the existing requirements of the CTA and FinCEN's implementing regulations in a way more readily accessible to and understandable by the general public than the CTA and FinCEN's regulations themselves.

11. FinCEN also has been engaging in a variety of outreach efforts to raise awareness of the CTA's requirements. Through these outreach events, FinCEN has received questions from a variety of stakeholders, including industry and trade groups, congressional offices, professional communities of interest, business owners, and the general public. In addition, FinCEN has a dedicated Beneficial Ownership Contact Center to receive inquiries relating to the CTA's beneficial ownership information reporting requirements.

12. FinCEN first published FAQs about the CTA's beneficial ownership reporting requirements on its webpage in March 2023. Since then, FinCEN has periodically amended

these FAQs to add new FAQs addressing additional issues and to clarify existing FAQs. FinCEN continues to update these FAQs.

13. To determine what FAQs to publish, FinCEN reviews questions received through various channels, including outreach events and the contact center. Generally, FinCEN considers content that an issue is 1) generally applicable to a likely large population, 2) raised in many inquiries, or 3) valuable due to the uniqueness of its topic to be potentially appropriate for an FAQ. FinCEN typically considers content that is very specific or only applies to a small population not to be appropriate for an FAQ.

14. To date, FinCEN has published two FAQs directly addressing homeowners associations' CTA reporting obligations, FAQs C.10 and D.13. Both of these FAQs were originally published on April 18, 2024, and FAQ C.10 was then amended on June 10, 2024. The amendments to FAQ C.10 did not change the FAQ's meaning but made certain technical clarifications to its language.

15. FinCEN published FAQs C.10 and D.13 because FinCEN had received multiple inquiries regarding homeowners associations' reporting obligations and because of the potentially broad population to which such guidance would apply. Although FinCEN representatives attended a video meeting with CAI representatives on April 17, 2024, to discuss CAI's concerns, these FAQs were in development prior to that meeting, and the FAQs were not FinCEN's response to CAI's December 28, 2023, request that FinCEN create an exemption for "community associations."

16. FinCEN has not denied CAI's December 28, 2023, exemption request, which remains under consideration at FinCEN as of the date of this declaration. Jimmy Kirby, FinCEN's

Deputy Director, sent a letter (Exhibit B) to Thomas Skiba, Chief Executive Officer of CAI, on July 25, 2024, explaining that FinCEN was considering CAI's request to exempt "community associations" pursuant to the relevant legal requirements. As of the date of this declaration, FinCEN representatives last spoke to CAI representatives regarding CAI's pending exemption request on August 20, 2024.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 2, 2024.

James R. Martinelli
Digitally signed by James R. Martinelli
Date: 2024.10.02 08:16:02 -04'00'

James Martinelli
Acting Associate Director, Policy Division
Financial Crimes Enforcement Network

Martinelli Declaration,

Exhibit A



Vishnu Sharma, CPA, CFE
2023 President
Sharma & Associates
Ft. Lauderdale, FL

Jeevan J. D'Mello, CMCA, AMS, LMS, PCAM
President-Elect
Zenesis Corporation
Dubai, UAE

Jessica M. Towles, CMCA, AMS, PCAM
Immediate Past President
CCMC, Littleton, CO

Peter Kristian, CMCA, LSM, PCAM
Chairman
Government & Public Affairs Committee
Hilton Head Plantation—General Manager
Hilton Head Island, SC

Ronald L. Perl, Esq.
Chairman
Federal Legislative Action Committee
Hill Wallack, LLP
Princeton, NJ

Thomas M. Skiba, CAE
Chief Executive Officer

Dawn M. Bauman, CAE
Chief Strategy Officer
Executive Director

6402 Arlington Blvd.
Suite 500
Falls Church, VA  22042
888.224.4321
www.caionline.org

December 28, 2023

The Honorable Janet Yellen
Secretary
U.S. Department of Treasury
1500 Pennsylvania Avenue, NW
Washington, DC 20220

Ms. Andrea Gacki
Director
Financial Crimes Enforcement Network
2070 Chain Bridge Road
Vienna, VA 22182

Subject: Request for Exemption from Beneficial Ownership Interest Reporting under the Corporate Transparency Act and Anti-Money Laundering Act of 2021

Dear Secretary Yellen and Director Gacki:

I am writing to you on behalf of Community Associations Institute (CAI), the only national entity representing condominium associations, homeowners associations, and housing cooperatives across the United States. As we navigate implementation of the Corporate Transparency Act (CTA) and Anti-Money Laundering (AML) Act of 2021, we respectfully request an exemption for community associations from the beneficial ownership interest reporting requirements outlined in the legislation.

According to the Foundation for Community Association Research, the authoritative source in our field, there are approximately 70.1 million Americans residing in more than 355,000 community associations nationwide. These associations range from two-unit condominiums to large-scale associations with thousands of homes. The majority of these associations have fewer than 50 homeowners and are self-managed by volunteers who are not aware of their obligations under the statute.[1]

We acknowledge the importance of transparency and accountability in financial transactions, and we firmly believe community associations are inherently low-risk entities for money laundering and terrorist activities. The Department of the Treasury has acknowledged this in its statement, explicitly stating that local and regional nonprofits, which closely align with our member associations, pose a low risk in these areas.

---

[1] Source: Foundation for Community Association Research. "Community Association Fact Book 2022."
https://www.caionline.org/about/research/Documents/2022%20Fact%20Book.pdf

Page 2 – Community Associations Institute (CAI)
Community association exemption request from BOI

When you consider creating exemptions under CTA and AML, you must consider the financial model of a community association. Given the source and use of funds for community associations, there is no risk of terrorist activity and money laundering. [2]

- Community associations are usually organized as nonprofit, nonstock corporations in the state or statutorily authorized unincorporated associations. They usually do <u>not</u> qualify for a nonprofit tax determination by the IRS under Section 501(c) of the tax code. Instead, they typically file using Form 528/1120-H for homeowners associations. Which is a specific tax code form for community associations with a control in place very similar to the 501© status of the tax code.
- The community association is comprised of owners in a community. The owners each pay their fair share of the association's expenses through assessments. Assessments are determined by a budget adopted by an elected board of directors. The assessments are essentially the community association's only source of income. The only other income is typically minimal and generated by user fees and fines for violating the community's covenants.
- Assessments are like property taxes. They pay for the services delivered by the community including trash and snow removal, street maintenance, lighting, insurance, recreation facilities, stormwater management, landscaping, and more.
- Association expenses are usually fixed costs spent on contracts like trash removal, elevator maintenance, roof maintenance, landscaping, street maintenance, insurance, and payment for maintenance and repair of other amenities.
- Assessments also pay for services of licensed attorneys and CPAs who assist association boards in legal and financial compliance.
- The board of directors of a community association cannot collect assessments or make expenditures not authorized by the recorded covenants for their community.

Thus, it is obvious community associations are not a viable vehicle for terrorist activities or money laundering and should be exempted from the CTA and AML requirements.

Furthermore, the legislation explicitly outlines 23 exemptions from reporting requirements. One of which is granted to IRS tax-exempt organizations. Community associations operate like tax-exempt entities—with many small assessments and constrained expenditures. Consequently, we contend our members should be extended the same exemption afforded to tax-exempt organizations as outlined in the law. The specific exemptions language from the Corporate Transparency Act is outlined in section 6203(b)(6)(E).[3]

The legislation explicitly exempts entities that exercise governmental authority. Community associations, while private, exist primarily to govern common interest communities. They are providers of essential services similar to local governments. We respectfully suggest it makes sense to treat community associations like other entities that exercise governmental authority.

---

[2] Department of the Treasury. "Anti-Money Laundering and Countering the Financing of Terrorism (AML/CFT) Programs; Effectiveness." https://home.treasury.gov/system/files/126/20180511_SAR_AboutUs.pdf

---

[3] Corporate Transparency Act. Section 6203(b)(6)(E). https://www.congress.gov/bill/116th-congress/house-bill/2513/text

Page 3 – Community Associations Institute (CAI)
Community association exemption request from BOI

Another reason to grant an exemption is the redundancy of the information collection process. Community associations already furnish detailed information on their board members as part of annual tax or other statutory filings. Mandating an additional layer of reporting creates an unnecessary burden on these associations, especially for smaller associations that are self managed by volunteers.

The Foundation for Community Association Research estimates 2.5 million volunteer leaders serving on their community board of directors will be affected by this burdensome reporting requirement. This number is so large because directors of a community association may change every year.

Those who govern community associations are not investors and serve without any remuneration. We fear complying with this reporting requirement may stifle volunteerism and expose volunteers to civil and criminal penalties. Why should an unpaid volunteer subject themselves to the risk of liability? That risk will exacerbate the ongoing problem of finding volunteers to serve on community association boards. Reporting burdens are magnified by requirements in the CTA that updates be filed within 30 days of any changes to BOI. There is frequent turnover in association board members (beneficial owners) increasing this reporting burden and potential penalties for noncompliance. This impact emphasizes the urgency of our request for an exemption to alleviate the administrative and financial strain on our member associations.

In conclusion, we respectfully urge the Department of the Treasury to exempt community associations from the Corporate Transparency Act and Anti-Money Laundering Act of 2021. The inherent nature of community associations as low-risk entities, coupled with their existing compliance through federal and state filings, underscores the redundancy and impracticality of subjecting them to additional reporting obligations.

We appreciate your time and attention to this matter and welcome the opportunity to engage in further dialogue to address any concerns or provide additional information to aid understanding of the unique position of community associations. Please feel free to contact my colleague, Dawn M. Bauman, CAE, CAI's chief strategy officer at dbauman@caionline.org or (703) 867-5588 anytime.

Sincerely,

Thomas M. Skiba, CAE
Chief Executive Officer
Community Associations Institute

# Martinelli Declaration, Exhibit B



Financial Crimes Enforcement Network
U.S. Department of the Treasury

Washington, D.C. 20220

July 25, 2024

Thomas M. Skiba
Chief Executive Officer
Community Associations Institute
6402 Arlington Blvd.
Suite 500
Falls Church, VA 22042

Subject: Request for Exemption to the Corporate Transparency Act's Reporting Requirements for Certain Community Associations

Dear Mr. Skiba:

Thank you for your letter to the Financial Crimes Enforcement Network (FinCEN) dated December 28, 2023, on behalf of the Community Associations Institute (CAI). Your letter requests an exemption for a category of entities—certain community associations, such as homeowners associations, condominium associations, and housing cooperatives (collectively, "HOAs")—from the obligation to report beneficial ownership information ("BOI") to FinCEN under the Corporate Transparency Act (CTA).[1]

As you are aware, FinCEN issued implementing regulations at 31 CFR 1010.380 to implement the BOI reporting requirements of the CTA.[2] Among other things, the regulations set forth the definition of a "reporting company," and specify what information such entities must report to FinCEN. The regulations also set forth 23 exemptions at 31 CFR 1010.380(c)(2) that describe categories of entities that are not included in the reporting company definition and which, consequently, are not required to report their BOI. These exemptions are closely based on the 23 statutory exemptions enumerated in the CTA.[3]

HOAs are not specifically listed within these exemptions. Therefore, if an HOA otherwise meets the definition of a "reporting company" and does not meet the criteria set out in one of the 23 exemptions, it is required to report BOI to FinCEN under the CTA and its implementing regulations, 31 CFR 1010.380.

---

[1] The CTA is Title LXIV of the William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021, Public Law 116-283 (Jan. 1, 2021). Division F of the NDAA is the Anti-Money Laundering Act of 2020, which includes the CTA at section 6403. The CTA is codified at 31 U.S.C. 5336.
[2] *See generally* FinCEN, Beneficial Ownership Information Reporting Requirements, 87 FR 59498 (Sept. 30, 2022).
[3] 31 U.S.C. 5336(a)(11)(B).

Thomas M. Skiba

July 25, 2024																													Page 2

Under the CTA, the Director of FinCEN[4] is authorized to exempt a "class of entities" from the BOI reporting requirements in certain circumstances by excluding them from the definition of a reporting company.[5] In order to exempt a class of entities, the CTA requires the issuance of a regulation by which FinCEN determines that requiring BOI from such entities:

- would not serve the public interest; and
- would not be highly useful in national security, intelligence, and law enforcement agency efforts to detect, prevent, or prosecute money laundering, the financing of terrorism, proliferation finance, serious tax fraud, or other crimes.[6]

The written concurrence of the Attorney General and the Secretary of Homeland Security is also required.

FinCEN is considering your request to exempt a class of HOA entities, pursuant to the above legal requirements. In the meantime, however, as stated previously, unless an entity qualifies for an exemption found at 31 CFR 1010.380(c)(2), it may be considered a reporting company that must report its BOI to FinCEN. Additional information may be found on FinCEN's BOI website at *https://www.fincen.gov/boi*.

Sincerely,

*Jimmy Kirby*

Jimmy Kirby
Deputy Director

---

[4] The authority of the Secretary of the Treasury to administer the Bank Secrecy Act has been delegated to the Director of FinCEN. Treasury Order 180-01 (Jan. 14, 2020), *available at* https://home.treasury.gov/about/general-information/orders-and-directives/treasury-order-180-01.
[5] 31 U.S.C. 5336(a)(11)(B)(xxiv).
[6] *Id.*